DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:  MATTHEW R. SHAHABIAN
One St. Andrew's Plaza
New York, New York 10007
Tel: (212) 637-1046

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

UNITED STATES OF AMERICA,

               Plaintiff,

       - v. -

$668.02 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT IN CITIBANK,
N.A., ACCOUNT 4897896885, HELD IN THE
NAME OF CHAD LAFOREST, AND ALL
FUNDS TRACEABLE THERETO,

$4,741.82 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT IN CITIBANK,
N.A., ACCOUNT ENDING 6893, HELD IN THE
NAME OF CHAD LAFOREST, AND ALL
FUNDS TRACEABLE THERETO,

$555.07 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT IN TD BANK
ACCOUNT 4345668101, HELD IN THE NAME
OF CHAD LAFOREST AND ALL FUNDS
TRACEABLE THERETO,

$6.11 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT IN BANK OF
AMERICA, N.A. ACCOUNT 4850449066
HELD IN THE NAME OF ASHLEY
WILLHITE, A/K/A "ASHLEY LAFOREST,"
AND ALL FUNDS TRACEABLE THERETO,

$14.40 IN UNITED STATES CURRENCY
FORMERLY ON DEPOSIT IN BANK OF
AMERICA, N.A. ACCOUNT 483030632324,
HELD IN THE NAME OF DAVID LAFOREST,
AND ALL FUNDS TRACEABLE THERETO,

$726.55 IN UNITED STATES CURRENCY

**VERIFIED CIVIL
COMPLAINT FOR
<u>FORFEITURE</u>**

**21 Civ. _____**

FORMERLY ON DEPOSIT IN CITIBANK, N.A. ACCOUNT 4989228629 HELD IN THE NAME OF DAVID LAFOREST, AND ALL FUNDS TRACEABLE THERETO,

$20.75 IN UNITED STATES CURRENCY FORMERLY ON DEPOSIT IN CITIBANK, N.A. ACCOUNT ENDING 8637 HELD IN THE NAME OF DAVID LAFOREST, AND ALL FUNDS TRACEABLE THERETO,

$6,688.18 IN UNITED STATES CURRENCY FORMERLY ON DEPOSIT IN ROBINHOOD SECURITIES LLC, AS THE CLEARING BROKER FOR ROBINHOOD FINANCIAL LLC, ACCOUNT 741386841 HELD IN THE NAME OF CHAD LAFOREST, AND ALL FUNDS TRACEABLE THERETO,

$6.67 IN UNITED STATES CURRENCY FORMERLY ON DEPOSIT IN ROBINHOOD SECURITIES LLC, AS THE CLEARING BROKER FOR ROBINHOOD FINANCIAL LLC, ACCOUNT 865871438, HELD IN THE NAME OF DAVID LAFOREST, AND ALL FUNDS TRACEABLE THERETO,

Defendants-*in-rem*.

Plaintiff United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to Title18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C) by the United States of America seeking the forfeiture of the following:

a.      $668.02 in United States currency formerly on deposit in Citibank, N.A. Account 4897896885, held in the name of Chad Laforest (the "First Citibank Chad

Account"),

b.      $4,741.82 in United States currency formerly on deposit in Citibank, N.A. Account ending 6893, held in the name of Chad Laforest (the "Second Citibank Chad Account"),

c.      $555.07 in United States currency, formerly on deposit in TD Bank Account 4345668101, held in the name of Chad Laforest (the "TD Bank Chad Account"),

d.      $6.11 in United States currency, formerly on deposit in Bank of America, N.A. Account 4850449066, held in the name of Ashley Willhite (the "BOA Ashley Account"),

e.      $14.40 in United States currency, formerly on deposit in Bank of America, N.A. Account 483030632324, held in the name of David Laforest (the "BOA David Account"),

f.      $726.55 in United States currency, formerly on deposit in Citibank, N.A. Account 4989228629, held in the name of David Laforest (the "First Citibank David Account"),

g.      $20.75 in United States currency, formerly on deposit in Citibank, N.A. Account ending 8637, held in the name of David Laforest (the "Second Citibank David Account"),

h.      $6,688.18 in United States currency, formerly on deposit in Robinhood Securities LLC, as the clearing broker for Robinhood Financial LLC, Account 741386841 held in the name of Chad Laforest (the "Robinhood Chad Account"), and

i.      $6.67 in United States currency, formerly on deposit in Robinhood Securities LLC, as the clearing broker for Robinhood Financial LLC, Account 865871438, held in

the name of David Laforest (the "Robinhood David Account").

( a. through i., collectively, the "Defendants-*in-rem*").

2.     This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.     Venue is proper pursuant to Title 28, United States Code, Section 1395 because the Defendants-*in-rem* are currently in the custody of the United States Secret Service ("USSS") located within the judicial district for the Southern District of New York. Venue is also proper pursuant to Title 28, United States Code, Section 1355 (b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

4.     As set forth below, there is probable cause to believe that the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering, in violation of Title 18, United States Code, Section 1956, and pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds traceable to wire fraud, in violation of Title 18, United States Code, Section 1343, or property traceable thereto.

## PROBABLE CAUSE FOR FORFEITURE

5.     This action arises out of an investigation conducted by Special Agents with the USSS and Detectives with the New York City Police Department's Financial Crimes Unit ("NYPD") into a scheme to embezzle over $17 million from an electrical contracting company (the "Scheme") and to launder the fraudulently acquired funds.

6.     On or about April 26 , 2021, a grand jury sitting in this District indicted four members of the Laforest family, Sabitri Laforest, Garry Laforest, Tatiana Laforest and Sanjay Laforest, arising out of their involvement in the Scheme and charging them in a three-count Indictment 21 Cr. 272 (CM) (the "Indictment"), with conspiracy to commit wire fraud, in violation

of Title 18, United States Code, Section 1349 (Count One); wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Two); and money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956(h) (Count Three). The Indictment is attached hereto as Exhibit A and is incorporated by reference as if set forth fully herein. Those charges remain pending as of the filing of this Complaint.

7.      In connection with its investigation into the Scheme, the Government obtained a seizure warrant on May 7, 2021 (the "Seizure Warrant")[1], for the contents of various accounts which contained the proceeds of the Scheme, or that were involved in the Scheme, or that contained monies traceable thereto. The Seizure Warrant was executed and the contents of the accounts thereafter seized by the USSS.

8.      By this Complaint, the United States is now seeking the forfeiture of the funds that were seized from some of those accounts, herein referred to collectively as the Defendants-*in-rem*. Probable cause for the forfeiture of each of the Defendants-*in-rem* is set out more fully below.

**The Embezzlement Scheme**

9.      Beginning in or about January 2013 until her termination in October 2020, Sabitri Laforest ("Sabitri") was employed as controller for an electrical contracting company ("Victim-1").  As controller of Victim-1, Sabitri had access to its bank accounts.

10.     In or about October 2020, the NYPD began an investigation into the circumstances of Sabitri's termination.  Financial records reviewed from Victim-1's bank, a credit card company (the "Credit Card Company"), and elsewhere demonstrated that Sabitri and other

---

[1] A second seizure warrant was obtained on May 13, 2021 for the sole purpose of correcting one of the account numbers contained in the Seizure Warrant.  They are in all other respects identical and will therefore be collectively referred to herein as the "Seizure Warrant."

members of her family used Sabitri's access to Victim-1's office expense account (the "Victim Bank Account") to make payments to a charge account opened by Sabitri's daughter, Tatiana Laforest ("Tatiana") at the Credit Card Company (the "Laforest Charge Account").

11.     A review of records from the Credit Card Company revealed that Sabitri, Tatiana, and Sabitri's husband Garry Laforest ("Garry") were all cardholders on the Laforest Charge Account, and that they regularly charged hundreds of thousands of dollars each month to the Laforest Charge Account.

12.     For at least seven years, beginning at least in or about January 2013 through October 2020, the Laforest Charge Account was paid off exclusively with funds from the Victim Bank Account.

13.     In addition to using the Laforest Charge Account to purchase goods and services from third parties, Sabitri, Garry, Tatiana and Sabitri's son Sanjay Laforest ("Sanjay") (collectively, the "Laforest Defendants") used the Laforest Charge Account to transfer large sums of money to other financial accounts that they controlled, or that were under the control of other Laforest family members.

14.     As described in further detail below, the Laforest Defendants used the Laforest Charge Account to transfer large sums to accounts in the names of the Laforest Defendants and other Laforest family members located at, among others, an online payment processor ("Processor-1").  Thereafter, the Laforest Defendants conspired to launder the proceeds of the Scheme by making additional transfers of money from their Processor-1 Accounts to other financial accounts they controlled, or that were under the control of other Laforest family members, with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the Scheme.

**<u>Use of Processor-1 to Transfer Funds to other Bank Accounts</u>**

15.     Processor-1 is an online payment processor that, among other things, allows users to send and receive money from their Processor-1 account to other Processor-1 accounts. To send money, the user can link to a credit or charge card to their Processor-1 account. When a user sends a payment to another person, Processor-1 charges the user's charge card and credits the recipient of the transfer in the corresponding amount, plus, in certain circumstances, a transaction fee. The recipient, in turn, can send the money credited to their Processor-1 account to another Processor-1 account, or they can link a bank account to their Processor-1 account and transfer the money from their Processor-1 account to their bank account.

16.     The Laforest Defendants used the Laforest Charge Account as a funding source for Processor-1 accounts in the names of Garry and Tatiana (the "Processor-1 Garry Account" and the "Processor-1 Tatiana Account") by linking the Laforest Charge Account to the Processor-1 Garry Account and the Processor-1 Tatiana Account.

17.     They then used the Laforest Charge Account, as linked to these Processor-1 accounts, to send money to other Processor-1 accounts controlled by Sabitri, Tatiana, and Sanjay, and by Sabitri and Garry's sons Chad Laforest and David Laforest, and by David Laforest's wife Ashley Willhite a/k/a "Ashley Laforest."

18.     For each Processor-1 transaction, the Laforest Charge Account would be charged the amount sent, and, in certain circumstances, a transaction fee—all of which would later be paid off using the Victim Bank Account—and the recipient would be credited the amount transferred in their Processor-1 account.

19.     Thereafter, members of the Laforest family would make further transfers of funds from their respective Processor-1 Accounts to accounts at other banks or financial institutions under their control.

20.     Specifically, financial records obtained in the course of this investigation revealed the following:

(a)     Beginning on or about May 18, 2015 until on or about November 28, 2018, the Laforest Defendants sent a total of approximately $211,355.50 using the Laforest Charge Account to Processor-1 Account XXXXXX0938 held in the name of Chad Laforest (the "Processor-1 Chad Account"). From the Processor-1 Chad Account:

(i)     between in or about September 2015 and November 2018, a total of approximately $172,792.45 was transferred to the First Citibank Chad Account, and

(ii)    between September 2017 and November 2018, a total of approximately $30,413 was transferred to the TD Bank Chad Account.

(b)     Beginning on or about September 12, 2015 until on or about November 29, 2018, the Laforest Defendants transferred a total of approximately $157,620.00 to Processor-1, Inc. Account XXXXX1496 held in the name of Ashley Willhite (the "Processor-1 Ashley Account"). From the Processor-1 Ashley Account:

(i)     between September 2015 and November 2018, a total of approximately $134,694.75 was transferred to the BOA Ashley Account.

(c)     Beginning on or about October 10, 2015 until on or about November 28, 2018, the Laforest Defendants transferred approximately $263,490.00 to Processor-1, Inc. Account XXXXX9783 held in the name of David Laforest (the "Processor-1 David Account"). From the Processor-1 David Account:

(i)     between in or about February 2017 and November 2019, a total of approximately $122,737.37 was transferred to the BOA David Account, and

(ii)    between October 2015 and July 2019, a total of approximately $120,466.00 was transferred to the First Citibank David Account.

21.     In addition, I have learned from Citibank that Citibank identified the funds in the Second Citibank Chad Account as traceable to the First Citibank Chad Account and the Second Citibank David Account as traceable to the First Citibank David Account. Citibank provided the funds from the Second Citibank Chad Account and the Second Citibank David Account to law enforcement in connection with the execution of the Seizure Warrant.

22.     Accordingly, the First Citibank Chad Account, the Second Citibank Chad Account, the TD Bank Chad Account, the BOA Ashley Account, the BOA David Account, the First Citibank David Account, and the Second Citibank David Account each received funds representing proceeds of the Scheme from Processor-1 Accounts in the names of Laforest Defendants, and constitute property involved in a money laundering transaction or an attempted

money laundering transaction, in violation of Title 18, United States Code, Section 1956, or property traceable to such property.

## **Further Transfers to Robinhood Accounts**

23.     Robinhood is an online trading platform that allows users to invest in securities using the Robinhood App. To make investments, a user can link a bank account to their Robinhood account and transfer funds to the Robinhood account, which can then be used to invest in securities.

24.     Records obtained from Robinhood during the course of this investigation revealed that:

(a)     From in or about June 2020 through in or about April 2021, Chad Laforest transferred approximately $9,059.27 from the First Citibank Chad Account to the Robinhood Chad Account.

(b)     From in or about March 2020 through in or about March 2021, David Laforest transferred approximately $10,750 from the First Citibank David Account to the Robinhood David Account.

25.     Accordingly, the Robinhood Chad Account and the Robinhood David Account each received funds from bank accounts that constitute property involved in money laundering transactions, or an attempted money laundering transactions, and they likewise constitute property involved in money laundering or attempted money laundering, or are property traceable to such property.

26.     Accordingly, the Defendants-*in-rem* are subject to forfeiture to the United States as property involved in money laundering and proceeds traceable to wire fraud.

## CLAIMS FOR FORFEITURE

**Forfeiture Under 18 U.S.C. § 981(a)(1)(A)**
**(Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. §
1956 or Property Traceable to Such Property)**

27.    Paragraphs 1 through 24 of this Complaint are repeated and re-alleged as if fully set forth herein.

28.    Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956, or any property traceable to such property, is subject to forfeiture to the United States.

29.    18 U.S.C. § 1956(a)(1)(A)(i) & (a)(1)(B)(i) imposes a criminal penalty on any person who:

> knowing that the property involved in a financial transaction involves the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . .
>
> (A)    (i) with the intent to promote the carrying on of specified unlawful activity;
>
> (B)    knowing that the transaction is designed in whole or in part (i)  to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

30.    As defined in 18 U.S.C. § 1956(c)(7), "specified unlawful activity," includes, among other things, racketeering activity as defined in 18 U.S.C. § 1961(1).  Section 1961(1), in turn, defines racketeering activity to include wire fraud, in violation of 18 U.S.C. § 1343.

31.    Title 18, United States Code, Section 1343 provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

32.     By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1956, or as property traceable to such property.

**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Property Constituting or Derived from Proceeds Traceable to a Violation of 18 U.S.C. § 1343 or Property Traceable to Such Property)**

33.     Paragraphs 1 through 30 of this Complaint are repeated and re-alleged as if fully set forth herein.

34.     Pursuant to Title 18, United States Code Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense.

35.     As set forth above, for purposes of Section 1956, "specified unlawful activity" includes wire fraud, in violation of 18 U.S.C. § 1343.

36.     By reason of the foregoing the Defendants-*in-Rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property constituting or derived from proceeds traceable to a violation of Title 18, United States Code, 1343.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the

Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      November 10, 2021

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By: _____
Matthew R. Shahabian
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-1046

## **DECLARATION OF VERIFICATION**

MARCELO RAZZO, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Detective with the New York City Police Department; that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on November  9 , 2021

Marcelo Razzo
Detective
New York City Police Department

# EXHIBIT A

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -    X
                                 :
UNITED STATES OF AMERICA         :    SEALED INDICTMENT
                                 :
         - v. -                  :    21 Cr.  272
                                 :
SABITRI LAFOREST,                :
GARRY LAFOREST,                  :
TATIANA LAFOREST                 :
    a/k/a "Tatiana Mays," and    :
SANJAY LAFOREST,                 :
                                 :
         Defendants.             :
                                 :
- - - - - - - - - - - - - - -    X
```

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

### OVERVIEW OF THE EMBEZZLEMENT SCHEME

1.     From at least in or about 2013, up through and
including in or about 2020, SABITRI LAFOREST ("SABITRI"), GARRY
LAFOREST ("GARRY"), TATIANA LAFOREST, a/k/a "Tatiana Mays"
("TATIANA"), and SANJAY LAFOREST ("SANJAY"), the defendants,
used SABITRI's position as the controller of an electrical
contracting company ("Victim-1") to embezzle over $17 million
from Victim-1.

2.     As the controller of Victim-1, SABITRI had access to
the company's bank accounts. The defendants used SABITRI's
access to Victim-1's office expense account (the "Victim Bank
Account") to make payments to a charge account that TATIANA

opened (the "Laforest Charge Account" or the "Account") at a credit card company (the "Credit Card Company").

3. SABITRI, GARRY, and TATIANA were all cardholders on the Laforest Charge Account and regularly charged hundreds of thousands of dollars to the Account each month. From at least in or about January 2013 through in or about October 2020, the Laforest Charge Account was paid off exclusively with money from the Victim Bank Account.

4. In addition to making purchases on the Laforest Charge Account, the defendants used the Laforest Charge Account to make cash advances and to transfer large sums of money to other accounts and restaurant and hospitality businesses controlled by the defendants, in order to make money stolen from Victim-1 appear to be legitimate revenues generated by the defendants' businesses. In an effort to further disguise the embezzlement scheme, the defendants also used the Laforest Charge Account to pay for costs associated with the defendants' restaurant and hospitality businesses––including SANJAY's companies, which operate under a certain d/b/a name ("Hospitality Group-1")––such as rent, food, and alcohol.

## RELEVANT INDIVIDUALS AND ENTITIES

5. SABITRI is approximately 59 years old. She is married to GARRY and is the mother of TATIANA and SANJAY. From at least in or about 1992 through in or about October 2020, SABITRI was

2

Victim-1's controller.

6. GARRY is approximately 64 years old. He is married to SABITRI and is the father of TATIANA and SANJAY.

7. TATIANA is approximately 36 years old.

8. SANJAY is approximately 38 years old.

9. SABITRI and GARRY own and operate a restaurant/catering company located in the vicinity of Elmont, New York ("Restaurant-1").

10. Hospitality Group-1 is a group of restaurant and hospitality companies located in Manhattan, New York owned by SANJAY. GARRY, TATIANA, and other members of the LAFOREST family have represented themselves as employees of Hospitality Group-1. Hospitality Group-1 operates two restaurants in Manhattan.

11. Victim-1 is an electrical contracting firm located in Manhattan, New York.

12. The Credit Card Company is a global financial services company headquartered in Manhattan, New York, that offers, among other things, charge card services to its customers.

**MEANS AND METHODS OF THE EMBEZZLEMENT SCHEME**

13. SABITRI was an employee of Victim-1 from at least in or about 1986 up until her termination in or about October 2020. At all relevant times during the offense, SABITRI was Victim-1's controller. As controller, she was responsible for all of

3

Victim-1's financials, such as payroll, accounting, and accounts payable and receivable.  SABITRI was authorized to use Victim-1's bank accounts, including the Victim Bank Account, to pay certain company expenses.

14.  In or about 2006, TATIANA opened the Laforest Charge Account.  As a charge cardholder, TATIANA could use her charge card to make purchases at vendors that accept the Credit Card Company's card in exchange for paying off her charges at the end of the each of month.  In or about November 2007, TATIANA added SABITRI to the Laforest Charge Account as a secondary cardholder who was given her own card and authorized to make charges on the Account.

15.  From at least in or about 2013 through in or about 2020, TATIANA and SABITRI exclusively used the Victim Bank Account to pay off the Laforest Charge Account.  Those payments were all routed through the Automated Clearing House ("ACH") network.  Whenever TATIANA or SABITRTI authorized a payment to the Laforest Charge Account, the Credit Card Company would submit a request to debit the Victim Bank Account and credit the Credit Card Company's bank account through the ACH network.  The Credit Card Company would in turn credit the Laforest Charge Account for paying its bill.

16.  To authorize these payments, TATIANA and SABITRI either (a) called the Credit Card Company; (b) accessed the

4

Credit Card Company's website from a computer, including from Victim-1's offices in Manhattan, New York; or (c) accessed the Credit Card Company's mobile website or application ("app") from a mobile phone.

17.   From at least in or about January 2013 up to and including at least in or about October 2020, SABITIRI, TATIANA, and GARRY--who was added as a secondary cardholder to the Laforest Charge Account in October 2013--charged approximately \$17 million to the Account.

### THE DEFENDANTS' USE OF THE EMBEZZLED FUNDS

18.   The charges the defendants incurred on the Laforest Charge Account and paid off using the Victim Bank Account fell into three broad categories: (i) personal expenses; (ii) cash advances and cash transfers to other personal accounts; and (iii) transfers to and purchases on behalf of restaurant and hospitality companies owned and controlled by the defendants.

19.   With respect to personal expenses, SABITRI, TATIANA, and GARRY used the Laforest Charge Account to charge, among other things, hundreds of thousands of dollars in purchases on travel, clothing, electronics, luxury goods, rent, and home improvements.   For example: (a) between approximately 2013 and 2020, SABITRI, TATIANA, and GARRY charged at least approximately \$639,000 in travel expenses with two airline companies to the Laforest Charge Account; and (b) between approximately 2015 and

5

2020, GARRY charged at least approximately $242,050 in tickets for a New York City professional basketball team to the Laforest Charge Account; (c) between approximately 2015 and 2020, GARRY, SABITRI, and TATIANA charged over approximately $250,000 in rent for two luxury apartments leased by SANJAY and TATIANA at a building in the vicinity of Hudson Yards in New York City to the Laforest Charge Account; (d) in or about 2020, SABITRI and GARRY spent at least approximately $100,000 on home improvements for a home they purchased in Parkland, Florida, by charging payments to the contractor to the Laforest Charge Account; and (e) in or about 2019 and 2020, SABITRI and GARRY purchased a 2019 Chevrolet Corvette ZR-1 and a 2020 Ford Shelby GT500 using the Laforest Charge Account.

20. The defendants also used the Laforest Charge Account to steal cash directly from the Victim Bank Account through cash advances and electronic cash transfers to other financial accounts controlled by the defendants and other members of the Laforest family. For example: (a) in or about 2020, TATIANA and another Laforest family member used TATIANA's charge card on the Laforest Charge Account to make over $132,000 in cash advances at ATMs located in Manhattan, New York, Long Island, New York, and Bayonne, New Jersey; (b) between approximately 2016 and 2020, GARRY and TATIANA incurred over $1.5 million in charges to an online payment processor ("Processor-1") on the Laforest

6

Charge Account, and directed the transfer of those funds to Processor-1 accounts controlled by SABITRI, TATIANA, SANJAY, and other Laforest family members; and (c) in or about 2020, SABITRI, GARRY, and SANJAY each opened an investment account with an online brokerage company ("Brokerage-1"), linked the Laforest Charge Account to their respective Brokerage-1 accounts, and made a total of over $200,000 in charges to Brokerage-1.

21. The defendants also used their ownership and control of their restaurant businesses to further enrich themselves using the Victim Bank Account and to disguise the proceeds of their embezzlement scheme as legitimate business income. For example: (a) between approximately 2014 and 2017, SABITRI, GARRY, and TATIANA charged over $390,000 to Restaurant-1, using the Laforest Charge Account; (b) between approximately 2015 and 2020, GARRY charged over $2.1 million to Hospitality Group-1, using the Laforest Charge Account; (c) between approximately 2018 and 2020, TATIANA charged over approximately $345,000 to the Laforest Charge Account for purchases from a restaurant supplier used by Hospitality Group-1; and (d) in approximately 2020, TATIANA charged over approximately $112,000 in rent for Hospitality Group-1 to the Laforest Charge Account.

22. In furtherance of the scheme to charge $2.1 million to Hospitality Group-1 using the Laforest Charge Account, SANJAY

7

used payment processor accounts for Hospitality Group-1 that he had opened with three payment processing companies ("Processors-2, -3, and -4"). These accounts allowed Hospitality Group-1 to accept credit cards for payment, including payments from the Laforest Charge Account.

23. In or about approximately 2015, 2019, and 2020, Processors-2, -3, and -4 each respectively froze payments from the Laforest Charge Account to Hospitality Group-1 and asked SANJAY to provide documentation for those transactions to confirm their legitimacy. In order to convince Processors-2, -3, and -4, to release the frozen funds and allow him to continue using Hospitality Group-1's payment processing accounts, SANJAY misrepresented the nature of the transactions, for example, by claiming that the payments were made by fictitious clients of Hospitality Group-1.

## UNRAVELLING OF THE EMBEZZLEMENT SCHEME

24. In or about September 2020, the Charge Company contacted Victim-1 and informed Victim-1 that the Victim Bank Account was being used to pay off significant charges for a charge card account associated with one of its employees, namely, SABITRI.

25. On or about October 7, 2020, Victim-1 fired SABITRI after confronting her for misusing the Victim Bank Account.

26. Victim-1's Bank retroactively clawed back from the

8

Charge Company approximately $714,000 in payments that TATIANA made to the Laforest Amex Card using the Victim Bank Account from in or about August 2020 through in or about September 2020.

### STATUTORY ALLEGATIONS

27.  From at least in or about 2013 up to and including at least in or about 2020, in the Southern District of New York and elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28.  It was a part and object of the conspiracy that SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

9

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

29.     The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

30.     From at least in or about 2013 up to and including at least in or about 2020, in the Southern District of New York and elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SABITRI, GARRY, TATIANA, and SANJAY participated in a scheme to defraud Victim-1 by embezzling Victim-1's money from the Victim Bank Account, and executed transactions to embezzle that money by means of causing electronic bank payments to be made to the Laforest Charge Account from the Victim Bank Account through telephone and the

10

internet.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

31.  The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

32.  From at least in or about 2014 up to and including at least in or about 2020, in the Southern District of New York and elsewhere, SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

33.  It was a part and an object of the conspiracy that SABITRI LAFOREST, GARRY LAFOREST, TATITANA LAFOREST a/k/a "Tatiana Mays," and SANJAY LAFOREST, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud scheme alleged in Counts One and Two of this Indictment, knowing that

11

the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

**FORFEITURE ALLEGATIONS**

34. As a result of committing the offense alleged in Counts Two of this Indictment, SABITRI LAFOREST, GARRY LAFOREST, TATIANA LAFOREST, a/k/a Tatiana Mays, and SANJAY LAFOREST, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

   a. Real property located on NW 70th Place in Parkland, Florida;

   b. One 2019 Chevrolet Corvette ZR-1 bearing VIN 1G1Y42D9XK5801366;

   c. One 2020 Ford Shelby GT500 bearing VIN 1FA6P8SJ6L5501627;

12

d. $2,179,458.42 funds in the bank account with account number ending in 7466 at TD Bank, N.A., and any and all funds traceable thereto;

e. $178,000.00 in funds in the account with account number ending in 2215 at PayPal, Inc., and any all funds traceable thereto;

f. $311,600.00 in funds in the account with account number ending in 8115 at PayPal, Inc., and any all funds traceable thereto;

g. $189,250.00 in funds in the account with account number ending in 2586 at PayPal, Inc., and any all funds traceable thereto;

h. $14,880.00 in funds, stocks, bonds or other securities in the brokerage account with account number ending in 3075 at Stockpile, Inc., or in the clearing account with account number ending in 6446 at Apex Clearing Corp., and any all funds traceable thereto;

i. $167.578.11 in funds, stocks, bonds or other securities in the brokerage account with account number ending in 8873 at Stockpile, Inc., or in the clearing account with account number ending in 6024 at Apex Clearing Corp., and any all funds traceable thereto; and

j. $2000.00 in funds, stocks, bonds or other securities in the brokerage account with account number ending

13

in 2685 at Stockpile, Inc., or in the clearing account with account number ending in 0638 at Apex Clearing Corp., and any all funds traceable thereto.

35. As a result of committing the offense alleged in Count Three of this Indictment, SABITRI LAFOREST, GARRY LAFOREST, TATIANA LAFOREST, a/k/a Tatiana Mays, and SANJAY LAFOREST, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and the following specific property:

a. Any and all funds in the bank account with account number ending in 7466 at TD Bank, N.A., and any and all funds traceable thereto;

b. Any and all funds in the bank account with account number ending in 5496 at TD Bank, N.A., and any and all funds traceable thereto;

c. Any and all funds in the bank account with account number ending in 8431 at Bank of America, N.A., and any and all funds traceable thereto;

14

d.   Any and all funds in the bank account with account number ending in 6599 at UMB Bank, N.A., and any and all funds traceable thereto;

e.   Any and all funds in the bank account with account number ending in 0895 at Valley National Bank, N.A., and any and all funds traceable thereto;

f.   Any and all funds in the bank account with account number ending in 5129 at Bank of America, N.A., and any and all funds traceable thereto;

g.   Any and all funds in the bank account with account number ending in 5161 at Bank of America, N.A., and any and all funds traceable thereto;

h.   Any and all funds in the bank account with account number ending in 1070 at Citibank, N.A., and any and all funds traceable thereto;

i.   Any and all funds in the bank account with account number ending in 3921 at Citibank, N.A., and any and all funds traceable thereto;

j.   Any and all funds in the bank account with account number ending in 8548 at TD Bank, N.A., and any and all funds traceable thereto;

k.   Any and all funds in the bank account with account number ending in 9163 at JP Morgan Chase Bank, N.A., and any and all funds traceable thereto;

l.     Any and all funds, stocks, bonds, or other securities in the clearing account with account number ending 3741 at Robinhood Securities LLC as clearing broker for Robinhood Financial LLC or in the cash management ACH account with account number ending 3741 managed by Robinhood Securities LLC and Robinhood Financial LLC, and any and all funds traceable thereteo; and

m.     Any and all funds, stocks, bonds, or other securities in the clearing account with account number ending 7108 at Robinhood Securities LLC as clearing broker for Robinhood Financial LLC, and any and all funds traceable thereteo.

### Substitute Asset Provision

36.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

16

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of the defendant up to the value of the above forfeitable

property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

**SABITRI LAFOREST,**
**GARRY LAFOREST,**
**TATIANA LAFOREST**
**a/k/a "Tatiana Mays," and**
**SANJAY LAFOREST,**

Defendants.

### INDICTMENT

21 Cr.

(18 U.S.C. §§ 1343, 1349, 1956)

AUDREY STRAUSS
United States Attorney

Foreperson